UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                              Plaintiff,

v.

MICHAEL WILLIAMS,

                              Defendant.

Case # 12-CR-6152-FPG

DECISION & ORDER

---

## BACKGROUND

By Text Order of Referral of United States District Judge Hon. David G. Larimer, entered on November 1, 2012, this case was referred to United States Magistrate Judge Marian W. Payson, pursuant to 28 U.S.C. § 636(b)(1)(A)-(B). ECF No. 38. On January 15, 2013, this case was transferred to United States District Judge Hon. Frank P. Geraci, Jr. ECF No. 45.

A single-count Indictment against Defendant Michael Williams ("Defendant" herein) alleging sex trafficking of a minor in violation of 18 USC §§ 1591(a)(1), 1591(b)(2) and (2) was returned by the grand jury on November 1, 2012. ECF No. 37. Defendant filed pretrial motions to suppress evidence seized as a result of a warrantless entry into and search of 204 Caroline Street in Rochester, New York on February 8, 2012 and evidence of a photographic identification procedure conducted several hours later, as well as to dismiss the Indictment. ECF No. 53. The government filed papers in opposition to these motions. ECF Nos. 57, 60. The Magistrate Judge conducted evidentiary hearings on the suppression motions on June 14, 2013, October 11, 2013 and November 6, 2013 (ECF Nos. 71, 80, 81). Both parties filed supplemental briefs following the suppression hearings (ECF Nos. 86, 89) and, thereafter, following additional oral arguments held on May 30, 2014, the hearings were reopened and continued on June 20,

2014 and August 28, 2014. ECF Nos. 101, 102. Supplemental post-hearing memoranda were submitted, respectively, by the government on October 6, 2014 (ECF No. 106) and by the Defendant on January 3, 2015 (ECF No. 110).

The Magistrate Judge filed a Report and Recommendation on February 2, 2015, recommending that this Court deny Defendant's motions. ECF No. 112. On April 17, 2015, Defendant filed Defendant's Objection to the Magistrate Judge's Report and Recommendation ("Def.'s Objections"), on the grounds that the Magistrate Judge erred in finding that (1) "the police's warrantless entry into an apartment at 204 Caroline Street in the City of Rochester on February 8 and February 9, 2012 was reasonable under the emergency aid doctrine"; and (2) "the information obtained by the police's reading of the e-mails on the computer in the apartment was permissible." ECF No. 117. Thereafter, on May 8, 2015, the government timely filed its Response to the Defendant's Objections to the Report and Recommendation ("Gov't Resp."), contending that the Magistrate Judge's recommendation to deny suppression of evidence and statements was correct and, further, that the Defendant never established standing to contest the search of the contents of the laptop computer. ECF No. 120. Based on Defendant's assertion that he needed an opportunity to address the standing issue set forth in the government's Response but not addressed by the Magistrate Judge in her Report and Recommendation, and with no opposition from the government, this Court granted Defendant time to file a reply memorandum. ECF No. 121. Defendant has timely filed Defendant's Reply Memorandum of Law ("Def.'s Reply"). ECF No. 122.

## DISCUSSION

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Magistrate Judge's Report and Recommendation to which objections have been made. Under this provision, "[a] judge may accept, reject, or modify, in whole or in part, the

2

findings or recommendations made by the magistrate." *Id.* Upon a *de novo* review of the Report and Recommendation, and due consideration of Defendant's Objections, the government's Response, the Defendant's Reply, the certified transcripts of the motion hearings held on June 14, 2013, October 11, 2013, November 6, 2013, June 20, 2014, and August 28, 2014, the prior written submissions of the parties, as well as their motion papers, I find no basis to alter, modify, or reject the Magistrate Judge's Report and Recommendation.

Defendant states that the Magistrate Judge's Report and Recommendation extensively and accurately summarized the testimony of the various witnesses at the suppression hearings. Upon review of the certified transcripts of the suppression hearings, I concur with the Defendant's assessment regarding the accuracy of the Magistrate Judge's reporting in the Report and Recommendation of the relevant facts adduced at the hearing, and I will refer to those facts as necessary to determine Defendant's Objections. A brief summary is helpful.

This case began with a call to 911 shortly before 4:00 P.M. on February 8, 2012 from the aunt of a missing female minor named TJ, believed to be held against her will. The police investigation into an extenuating missing person case began immediately. At approximately 3:50 or 3:55 P.M., police responded to the home of the aunt and spoke with her son Nicholas Justiniano who showed the officers various cell phone text communications he received from the missing minor beginning shortly after 2:00 P.M., indicating that she was being held against her will in a location off South Avenue and feared that she would be beaten if she tried to leave. He also showed them on his cell phone an advertisement on Backpage.com for escort services depicting a photograph of two scantily and provocatively clad females, a young girl whom he identified as TJ, and a white female identified in the advertisement as "Chrissy." The Backpage.com advertisement identified the location as "Rochester, My place? Southwedge...Or yours?" and provided a cell phone number. Police investigators understood this and other

3

information in the advertisement, "2 is so much more fun than just one" and "We offer DOUBLES," to be for prostitution services.

Justiniano went to the police station and was there for about two hours, as the investigation continued. Meanwhile, police officers worked to pinpoint the location of the cellphone text communications from TJ and to track down the owner of the cellphone listed in the advertisement, as well as to obtain information on the whereabouts of "Chrissy" and TJ. They determined that the cell phone used by TJ and the cell phone number listed in the Backpage.com advertisement for contacting "Chrissy" had the same carrier, subscriber name, and address.[1] Additionally, police officers determined using GPS that the location of the cell phone used by TJ was in the Southwedge[2] neighborhood.

Justiniano later returned to the police station and informed police investigators that "Chrissy," the woman in the advertisement picture with the minor TJ, was Chelsea Willenborg. Police investigators confirmed information provided by Justiniano that Chelsea Willenborg was the actual name of "Chrissy," the other female in the Backpage.com advertisement with TJ, and determined that Willenborg was on probation supervision with the Monroe County Probation Department and, just that morning, had verified with her probation officer that she lived at 204 Caroline Street, Rochester, New York, which was in the Southwedge neighborhood. Furthermore, police determined that Caroline Street was directly off South Avenue. Using this information, police investigators went to 204 Caroline Street and entered the residence without a warrant to search for TJ, and thereupon, encountered another individual and the Defendant.

Before considering Defendant's Objections, it is important to point out, as did the Magistrate Judge, that the government has conceded that Defendant, an overnight guest at 204 Caroline Street, had standing to challenge the intrusion into the apartment. ECF Nos. 57, 112.

---

[1] Police investigators' efforts to contact the subscriber at the listed address were unsuccessful.
[2] The proper designation for "Southwedge" is South Wedge.

By this concession, the government appears to have recognized and appreciated the import of the relevant constitutional principles. "To claim Fourth Amendment protection, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83 (1998) (citing *Rakas v. Ilinois*, 439 U.S. 128, 140-44 (1978)) ("capacity to claim the protection of the Fourth Amendment depends … upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place"). Furthermore, an overnight guest may have a legitimate expectation of privacy in another person's home and thus have standing to challenge a warrantless entry and search, *see Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990) (status as an overnight guest alone is enough to show a reasonable expectation of privacy in the home that society is prepared to recognize as reasonable), but one who is "merely present with the consent of the householder may not," *see Carter*, 525 U.S. at 90.

I turn now to Defendant's Objections regarding the inapplicability of the emergency aid doctrine to the facts of this case. For the reasons set forth herein below, I find unpersuasive his arguments that: (1) no objectively reasonable basis existed for the police to believe that anyone at the 204 Caroline Street apartment was in need of emergency aid; (2) the police lacked sufficient information to demonstrate that TJ was in need of emergency aid; and (3) the police conduct was inconsistent with existence of an emergency.

To be sure, the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has recognized "as a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (citing *Groh v. Ramirez*, 540 U.S. 551, 559 (2004)) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)). "The ultimate touchstone

of the Fourth Amendment is 'reasonableness,'" therefore, the warrant requirement is subject to certain exceptions, including the emergency aid exception which is grounded in the need to assist persons who are seriously injured or threatened with such injury. *Id.* (citations omitted). Thus, "law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Id.* (citations omitted).

As the Magistrate Judge found, the objective test determining whether the emergency aid doctrine applied was met here. *See Michigan v. Fisher*, 558 U.S. 45, 47 (2009); *Brigham City, Utah v. Stuart*, 547 U.S. at 404. The pertinent inquiry under this test is "whether the police, given the facts confronting them, reasonably believed that it was necessary to enter a home in order to render assistance or prevent harm to persons or property within." *Sutterfield v. City of Milwaukee*, 751 F.3d 542 (7th Cir.), *cert. denied*, 135 S. Ct. 478 (2014). A warrantless entry to assist a victim is justified if, based on the totality of the circumstances known to investigating police officers at the time of entry, it was objectively reasonable for the officers to enter without a warrant. *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998).

Here, prior to entering 204 Caroline Street, police investigators were confronted with circumstances in which TJ, an identified minor who had been reported missing, possibly abducted, was in cell phone communication with a young male cousin indicating that she was being held against her will in a location off South Avenue and feared that she would be beaten if she tried to leave. Investigators were also in possession of text messages exchanged between TJ and her cousin that day, and had viewed a Backpage.com advertisement which they understood to be for prostitution services, depicting TJ, along with another female, "Chrissy," both scantily and provocatively clad. The Backpage.com advertisement specifically identified the location as "Rochester, My place? Southwedge…Or yours?" They had determined that the cell phone used by TJ and the cell phone number listed in the Backpage.com advertisement for contacting

"Chrissy" had the same carrier, subscriber name, and address. Additionally, police investigators had determined that the location of the cell phone used by TJ was in the Southwedge neighborhood. They had confirmed information provided by TJ's cousin that Chelsea Willenborg was the actual name of "Chrissy," the other female in the Backpage.com advertisement with TJ, and had determined that Willenborg was on probation supervision with the Monroe County Probation Department and had verified with her probation officer that morning that she lived at 204 Caroline Street, which was in the Southwedge neighborhood and was directly off South Avenue.

Armed with this information and given the totality of the circumstances present in this case, police investigators reasonably could have believed it necessary to enter 204 Caroline Street in order to render assistance to or to prevent harm to persons therein, most particularly, TJ. Here, police possessed information sufficient to support their reasonable belief that TJ was a person in need of emergency aid and that she could be located in the apartment at 204 Caroline Street.

Furthermore, contrary to Defendant's position, police investigators acted in an "expeditious, if not immediate" manner consistent with the identified urgency at hand—to locate and recover a missing minor child being held against her will for prostitution. Here, police investigating the circumstances of a 911 report of a missing minor child being held against her will for prostitution undertook diligent, purposeful steps and employed substantial effort and resources in this investigation. Not only were diligent efforts made during the conduct of the investigation but, importantly, police did not proceed rashly, *i.e.*, without first taking steps to confirm or verify the information obtained as they pursued leads obtained during the investigation. As the record demonstrates, approximately six hours after receiving the 911 call, police investigators arrived at the 204 Caroline Street address in an attempt to rescue the minor.

7

Based upon the hearing testimony, the steps taken by police in the pursuit of this multi-pronged investigation clearly demonstrate diligence and appreciation of the seriousness of and urgency associated with the situation involving this minor. During this six-hour period following the 911 call, police investigators engaged in the following actions and immediately disseminated the information garnered thereby to other officers who were working on the case: interviewed the 911 caller and her son Justiniano; viewed the text messages exchanged between Justiniano and TJ; reviewed the Backpage.com advertisement depicting "Chrissy" and TJ; transcribed the initial text messages; monitored the continuing text message communications between Justiniano and TJ; contacted the cell phone carrier of the phone used by TJ; attempted to locate the two phones associated with TJ and attempted to locate the subscriber of the phone number listed in the advertisement; using GPS, located the cellphone TJ used to send text communications to Justiniano in the Southwedge; learned that Wallenborg was "Chrissy"; checked police records which revealed that Wallenborg was on probation and lived at 204 Caroline Street in the Southwedge neighborhood; compared police records, the Backpage.com advertisement, and Facebook photographs to verify that Wallenborg was the other female in the Backpage.com advertisement with TJ; contacted the Monroe County Probation Department to confirm Wallenborg's status and address; proceeded with probation officers to 204 Caroline Street; and took into consideration that obtaining a search warrant would likely have taken an additional two and a half to four hours, too long to locate a minor potentially in danger of being victimized by sexual assault or prostitution.

The intensive investigation which began with a 911 call shortly before 4:00 P.M. on February 8, 2012 culminated in locating the minor TJ and Willenborg at the Best Western Hotel on Jefferson Road in Henrietta, New York, later that evening. Defendant's Objections to the application of the emergency aid doctrine notwithstanding, I find that the Magistrate Judge,

8

having closely examined the facts, committed no error in assessing the factual circumstances existing at the time police officers and probation officers entered the apartment at 204 Caroline Street on February 8, 2012 to search for Willenborg and the minor victim TJ, and that she properly concluded that police lawfully entered 204 Caroline Street pursuant to the emergency aid doctrine.

Next, Defendant objects to the Magistrate Judge's conclusions regarding the officers' viewing of the laptop computer. Finding that the officers' warrantless entry and limited search of 204 Caroline Street was reasonable within the meaning of the Fourth Amendment, the Magistrate Judge concluded that the police officers' observation of information on the open and visible laptop screen in the bedroom of the premises was justified by the "plain view" exception to the warrant requirement, citing *U.S. v. Herndon*, 501 F.3d 683, 693 (6th Cir. 2007) (laptop properly seized without warrant where officer observed pornographic images of minor children in plain view while lawfully in defendant's residence). As the *Herndon* court stated, "[u]nder the plain view doctrine, 'if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant.'" *Id.* at 692 (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)).

Defendant offers several reasons for contending that the police investigator's reading of the emails was impermissible. Primarily, he contends that, assuming the utility of the emergency aid exception, such reading exceeded the scope of an emergency aid exception search for any one *at the premises* in imminent danger of serious harm. (Emphasis added by Defendant). This contention lacks merit.

First, he has provided no authority which forecloses application of the emergency aid exception to the warrant requirement in circumstances where police officers possessing a

reasonable and objective belief based on sufficient information that a person in danger of injury or serious, imminent harm could be located inside a particular premises, upon searching the premises, happen not to find that person there. Second, Defendant's primary reliance on *United States v. Mark*, Criminal Action No. 09-20, 2009 WL 5286598 (D.V.I. Dec. 28, 2009), is misplaced. In *Mark*, the district court ruled that police, who illegally searched defendant's home after he was outside and with no good reason to believe that anyone else posing a danger to law enforcement remained therein, and who conducted a search during which an officer read what was on the screen of a computer located in defendant's office on the second floor, went beyond the scope of a protective sweep which entailed at most "a cursory visual inspection of those places in which a person might be hiding" — i.e., "a quick and limited search of a premises," meant only to "protect the safety of police officers or others." *Id.* at *3-4. With regard to the viewing of the computer screen, the *Mark* court noted that Agent Purkey walked around the desk, observed the computer screen which was placed perpendicular to the doorway of the room and could not be seen from the hallway, and then walked closer to the computer to read what was on the screen, stating:

> When searching Blyden's office, Agent Purkey approached Blyden's computer not to ascertain whether a dangerous person was hiding within the computer, but to read words on the computer screen. This exceeds the bounds of a protective sweep, therefore, Agent Purkey did not view the computer screen from a lawful vantage point such that the search would be allowable under the 'plain view' doctrine. *See United States v. Menon*, 24 F.3d 550, 559 (3d Cir. 1994) (holding the plain view doctrine 'is grounded on the proposition that once police are in a position to observe an item firsthand, its' owner's privacy interest is lost').

*Id.* at *4.

Here, Inv. Gould testified that he and other officers walked through the apartment looking for Willenborg and TJ. In the bedroom, he observed on the bed an open laptop computer

with a lit screen displaying a series of emails arranging a meeting at the Best Western Hotel on Jefferson Road between "Chrissy", a person "Chrissy" was planning to bring with her, and a third person. Inv. Gould further testified that he did not touch the laptop, nor did he observe any other officer do so. The officers did not secure or seize the laptop.[3] Inv. Gould, who, along with other officers, was in the Caroline Street premises for about 20 to 30 minutes, accompanied other officers to the Best Western Hotel where they located Willenborg and TJ.

Unlike the district court in *Mark*, the Magistrate Judge in this case found that Inv. Gould was lawfully on the premises because police investigators reasonably believed that TJ, the minor held against her will for prostitution purposes, could be found at the Caroline Street location and, further, that he was lawfully in a position to observe the laptop computer screen from his vantage point upon entering the bedroom. I find no fault with the Magistrate Judge's analysis of the facts and legal conclusions regarding the applicability of the plain view doctrine.

Lastly, I agree with the Defendant that the government's belated argument regarding his failure to assert any privacy interest regarding the contents of the laptop computer as viewed on February 8, 2012 has been waived. *See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Grant v. Shalala*, No. 93-CV-0124E(F), 1995 U.S. Dist. LEXIS 6871, at *5 (W.D.N.Y. 1995). This argument, raised for the first time in the government's Response opposing Defendant's Objections, was never presented to the Magistrate Judge during the suppression hearings for inclusion in her Report and Recommendation, even though the Magistrate Judge made all parties aware of the parameters of the suppression hearings, and the government conceded, at the outset, Defendant's standing to challenge the intrusion into the apartment.

---

[3] The laptop was seized upon the execution of a search warrant issued on February 9, 2012. ECF No. 53, ¶¶ 101-11.

## CONCLUSIONS

For the afore-stated reasons, the Magistrate Judge's recommendation to deny the Defendant's Motion to Suppress reflects a well-reasoned analysis of facts and application of the relevant law. Accordingly, the Court accepts and adopts the Report and Recommendation filed by United States Magistrate Judge Marian W. Payson. ECF No. 112. As set forth herein above, Defendant's Motion to Suppress (ECF No. 53) is hereby denied in all respects.

IT IS SO ORDERED.

Dated: May 29, 2015
Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court